# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Cannon Cochran Management Services, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1534 C.D. 2023 |
| | : | |
| Scomed Supply (Bureau of Workers' Compensation Fee Review Hearing Office), | : | |
| Respondent | : | Submitted: April 8, 2025 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                                FILED:  May 7, 2025

Cannon Cochran Management Services, Inc. (Payor) petitions this Court for review of the November 27, 2023 Order of Fee Review Hearing Officer (HO) Barry Keller granting five Requests for Hearing to Contest Fee Review Determination (Hearing Requests) filed by Scomed Supply (Provider).  Through his Order, HO Keller found Provider to be due reimbursement at 80% of billed charges for effervescent tablets, Epsom salt, and cannabidiol (CBD) cream dispensed to Jason Patrick (Claimant) from June 2022 to May 2023 pursuant to Section 127.102 of the Workers' Compensation Bureau's (Bureau) Medical Cost Containment (MCC)

Regulations.[1]   Because Payor fails to advance a developed argument that HO Keller's determinations were erroneous in any way, we affirm his Order.

## I. Background

The underlying facts of this matter are not in dispute.  Claimant was injured on April 7, 2005, in the course of his employment with Orkin, LLC (Employer). Reproduced Record (R.R.) at 153a.  Since his injury, Claimant has not returned to work due to chronic pain, weakness, loss of sensation, memory difficulties, and sight impairment.  *Id.* at 119a.  Payor is a third-party administrator for Employer's workers' compensation claims.  *Id.* at 153a.

On May 6, 2022, based on a prescription written by Claimant's treating physician, Dr. Todd Bromberg, Provider dispensed effervescent tablets, Epsom salt, and CBD cream to Claimant on eight dates between June 29, 2022, and May 8, 2023.[2]   Provider then billed Payor for reimbursement on the same dates.[3] Payor

---

[1] Section 127.102 of the MCC Regulations provides that, if "a Medicare payment mechanism does not exist for a particular treatment, accommodation, product or service, the amount of the payment made to a health care provider shall be either 80% of the usual and customary charge for that treatment, accommodation, product or service in the geographic area where rendered, or the actual charge, whichever is lower."  34 Pa. Code § 127.102.

[2] Dr. Bromberg had previously prescribed other forms of treatment, the payment of which was also subject to dispute between the parties before HO Keller.  These included a "conductive garment," electrodes, batteries, wires, clinical gel, a knee spacer, spray, and alcohol wipes.  R.R. at 153a-54a.  Payor clarifies that it does not dispute its responsibility to pay for those forms of treatment and that its appeal is focused entirely on the reimbursement amount imposed for the Epsom salts, effervescent tablets, and CBD cream.  Payor's Br. at 11.

[3] On June 29, 2022, Provider billed $87.50 for two units of effervescent tablets; $16.80 for one unit of Epsom salt; and $270.00 for one unit of CBD cream.  On July 6, 2022, Provider billed $87.50 for two units of effervescent tablets; $16.80 for one unit of Epsom salt; and $270.00 for one unit of CBD cream.  On October 6, 2022, Provider billed $87.50 for two units of effervescent
**(Footnote continued on next page…)**

2

issued denials in response to five of these bills and, as far as the record indicates, failed to respond to the remaining three. *Id.* at 155a-56a. Accordingly, Provider filed five Applications for Fee Review pursuant to Section 306(f.1) of the Workers' Compensation Act (Act).[4] In response, the Bureau's Medical Fee Review Section circulated five administrative determinations concluding that Provider was due no money for the Epsom salts, effervescent tablets, and CBD cream. *Id.* at 157a-58a. Provider filed its five Hearing Requests in response to each of the administrative determinations. *Id.* at 158a.

After the Hearing Requests were assigned to him, HO Keller held two hearings. At the first, on July 26, 2023, Provider presented to HO Keller the bills issued to Payor and related exhibits. *Id.* at 131a-32a. Payor did not object to the admission of that evidence. *Id.* at 132a. At the second hearing, on February 22, 2023, Payor explained that it was not disputing Claimant's need for the Epsom salts, effervescent tablets, and CBD cream, but only the charge amounts, which were "exorbitant in [Payor's] opinion." *Id.* at 40a. In support, Payor presented screenshots of several internet searches performed by its counsel, which were said to indicate that the items in question could be purchased from various online retailers

---

tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. On November 7, 2022, Provider billed $87.50 for two units of effervescent tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. On February 6, 2023, Provider billed $87.50 for two units of effervescent tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. On March 6, 2023, Provider billed $87.50 for two units of effervescent tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. On April 6, 2023, Provider billed $87.50 for two units of effervescent tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. On May 8, 2023, Provider billed $43.75 for one unit of effervescent tablets; $33.60 for two units of Epsom salt; and $270.00 for one unit of CBD cream. *See* R.R. at 154a-155a.

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 531, renumbered as Section 306(f.1) and amended by Section 8 of the Act of July 2, 1993, P.L. 190, No. 44.

3

for far less than the amounts billed by Provider. *Id.* at 40a-41a. Provider expressed doubt as to the relevance of Payor's evidence but did not object to its admission. *Id.* at 41a.

In his November 27, 2023 Order, HO Keller granted the Hearing Requests and found Provider due reimbursement at 80% of the billed charges for the effervescent tablets, Epsom salt, and CBD cream dispensed to Claimant. *Id.* at 166a. In addition, HO Keller awarded 10% statutory interest to run from the date on which each payment was due. *Id.* HO Keller explained that the evidence presented by Payor was "insufficient to meet its burden of proving that the usual and customary charges for the items dispensed by Provider are anything other than Provider's actual charges," for two reasons. *Id.* at 163a. First, there was no evidence that the online retailers cited by Payor were in the same geographic area as Provider, as required by Section 127.102 of the MCC Regulations; second, it was unclear that the internet searches were performed by Payor's counsel concurrently with the eight billing dates. *Id.* This appeal followed.[5]

## II. Discussion

The fees allowed to a medical provider for the treatment of a compensable work injury are normally tied to the reimbursement rates authorized under the Medicare program. *Pa. Phys. Therapy Ass'n v. Oleksiak*, 265 A.3d 849, 851 (Pa. Cmwlth. 2021). When a Medicare payment mechanism is unavailable, Section 306(f.1)(3)(i) of the Act provides that the amount of payment shall be no more than

---

[5] Our standard of review in medical fee review cases is to determine whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact were supported by substantial evidence. *Workers' First Pharmacy Servs., LLC v. Bureau of Workers' Comp. Fee Rev. Off. (Gallagher Bassett Servs.)*, 225 A.3d 613, 616 n.3. Regarding questions of law, our scope of review is plenary and our standard of review is *de novo*. *Id.*

80% "of the charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." 77 P.S. § 531(3)i); *see also* Section 127.102 of the MCC Regulations (providing that, in the absence of a Medicare payment mechanism, "the amount of the payment made to a health care provider shall be either 80% of the usual and customary charge for that treatment, accommodation, product or service in the geographic area where rendered, or the actual charge, whichever is lower"). In medical fee disputes, the burden is initially upon the provider to establish that its application for fee review was timely filed. *Liberty Mut. Ins. Co. v. Bureau of Workers' Comp., Fee Rev. Hearing Off. (Kepko, D.O., Lindenbaum, D.O. c/o East Coast TMR)*, 37 A.3d 1264, 1269 n.11 (Pa. Cmwlth. 2012). Once a provider meets this burden, the burden then shifts to the insurer to establish by a preponderance of the evidence that it properly reimbursed the provider. *Id.*

Instantly, there is no dispute that Providers' Applications for Fee Review were timely filed. Thus, Payor bears the burden of proving that it properly reimbursed Provider for Claimant's Epsom salts, effervescent tablets, and CBD cream. Before HO Keller, Payor presented no evidence that it did so; rather, Payor asserted that the amounts billed by Provider were unreasonably high, and that the items dispensed to Claimant could be purchased from various online retailers for substantially less money. As noted, HO Keller found such evidence to be insufficient to support Payor's burden of proof, since Payor failed to establish that the online retailers were in Provider's geographic area or that the information presented was obtained concurrently with the relevant billing dates.

5

Before this Court, Payor maintains that it should "only have to reimburse [Provider] based on the prices of the items online," since the items are non-prescription and are "readily available to both patients and [p]roviders through the internet." *Id.* at 13. Payor explains that "the internet was in its infancy" when Section 306(f.1)(3)(i) of the Act and Section 127.102 of the MCC Regulations came into effect, and that the "global marketplace did not yet exist." *Id.* at 16. Thus, "it is understandable that the legislature would want to try and control medical costs by requiring that the charges be in accord with the Claimant's geographical area." *Id.* Today, by contrast, when "everything can be found online for less, this requirement is no longer necessary for non-prescription medical items." *Id.* A strict adherence to the MCC Regulations "allows for price-gouging by providers due to a now[-]antiquated geographical requirement," Payor asserts. *Id.* at 14. Payor further argues that HO Keller erred by requiring that its pricing evidence be obtained concurrently with the billing dates, as it "is completely unreasonable to expect a carrier to keep evidence of the specific price of a particular item on a particular day in the event that the bill might end up in the medical fee review process months later." *Id.* at 18. Finally, Payor argues that HO Keller erred by failing "to require [Provider] to prove usual and customary charges," as his reasoning "allows [p]roviders to bill whatever they want because all the burden on a fee review [petition] is shifted to the carrier." *Id.* at 20. Without citation to any relevant legal authority, Payor thus requests that Section 127.102 of the MCC Regulations and associated provisions in the Act be "nullified" and, alternatively, "reinterpreted." Payor's Br. at 14, 9.

We see no merit in Payor's arguments. Payor fails to state on what legal ground this Court, or any other court, may hold an act of the legislature to be "nullified" or grant any other form of relief that it requests. Rather than demonstrate

6

how HO Keller's decision deviated from legal authority, Payor attempts to persuade us that the legal authority itself should be rewritten to reflect contemporary economic conditions and Payor's notion of common sense. In other words, Payor appears to have mistaken this Court for the General Assembly. Even if we were so inclined, we have no power to modify or repeal a statute on the ground that it could be made more contemporary or efficient. If Payor believes that Section 306(f.1)(3)(i)'s "geographic area" requirement should be amended, then it is free to present its case to the legislators who are tasked with doing so. Since HO Keller properly relied on the Act and the MCC Regulations as they are currently written, we discern no error in his conclusions.

### III. Conclusion

For the foregoing reasons, we affirm HO Keller's Order.

_____
MATTHEW S. WOLF, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cannon Cochran Management      :
Services, Inc.,      :
              Petitioner      :
     :
         v.      :    No. 1534 C.D. 2023
     :
Scomed Supply (Bureau of Workers'      :
Compensation Fee Review Hearing      :
Office),      :
              Respondent      :

# **O R D E R**

AND NOW, this 7th day of May 2025, the Order of the Workers' Compensation Fee Review Hearing Office in the above-captioned matter, dated November 27, 2023, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge